FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA.
01 MAY 32 AM 9:36
SIGN_____
by DEPUTY CLERK

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CHRISTINA ESCOBEDO** | * | CIVIL ACTION |
| Plaintiff, | * | NO. 00-601 |
| **VERSUS** | * | SECTION D |
| **C.F. INDUSTRIES, INC. and TURNER INDUSTRIES, LTD.,** | * | MAGISTRATE DIVISION 3 |
| Defendants. | * | |

\* \* \* \* \* \* \* \*

### RESPONSE TO STATEMENT OF UNCONTESTED FACTS AND STATEMENT OF ADDITIONAL UNCONTESTED MATERIAL FACTS

NOW INTO COURT, through undersigned counsel, comes plaintiff, Christina Escobedo ("Escobedo"), who, pursuant to Local Rule 56, respectfully submits this Response to the Statement of Material Facts submitted by defendant, CF Industries, Inc. ("CF"), in support of its Motion for Summary Judgement and, Alternatively, for Dismissal. In addition, in opposition to the Motion filed by CF, Escobedo submits her Statement of Additional Uncontested Material Facts as to which she contends there is no genuine issue for trial.

### RESPONSE TO CF'S STATEMENT OF UNCONTESTED MATERIAL FACTS

In response to CF's Statement of Material Facts as to which it contends there is no genuine issue to be tried, Escobedo responds as follows:

1.  Admitted.
2.  Admitted.

1

3. Admitted.

4. Admitted.

5. Denied.

**STATEMENT OF ADDITIONAL UNCONTESTED MATERIAL FACTS**

In addition to CF's Statement of Material Facts, Escobedo submits that there is no genuine issue to be tried as to the following material facts:

1. The April 1996 Agreement of Terms and Conditions between CF and Catalyst Process Specialist, Inc. ("Cat Pro") (the "Independent Contractor Agreement") states:

> CONTRACTOR [Cat Pro] shall supply and direct or supervise all personnel required to properly perform the Services for CFII [CF Industries]. All such personnel shall be employed by or shall be under contract to CONTRACTOR. Article 3.
>
> CONTRACTOR shall carry and shall ensure that its subcontractors carry the insurance coverage of the type and with limits no less that those specified in the attached listing of insurance limits, with insurance carriers and under policies acceptable to CFII, including coverages for their respective employees performing the Services and any motor vehicles used by such employees in the course of their duties pursuant to this Agreement. Article 13 (which also contains additional insurance conditions).
>
> CONTRACTOR acknowledges that it is an independent contractor and not in any respect an agent or employee of CFII. CONTRACTOR is not subject to the direction or control of CFII as to the manner in which it performs services pursuant to this Agreement or any Service Agreement or Purchase Order or other agreement and shall not

2

represent to others that it is anything other than an independent contractor. Article 16.

No personnel furnished by CONTRACTOR shall be deemed under any circumstances to be agents or servants of CFII....Article 16.

As required under Section 13 of the Agreement of Terms and Conditions, CONTRACTOR shall carry and shall ensure that its subcontractors carry the following insurance coverages with limits no less than specified. CONTRACTOR shall be responsible for any deductibles.
(1) <u>WORKERS' COMPENSATION AND EMPLOYER'S LIABILITY</u>
a. <u>Coverage A - Workers' Compensation</u>
Statutory benefits coverage for liability imposed by the Louisiana Workers' Compensation law.
Listing of Insurance Limits attached to the Agreement of Terms and Conditions.

> Independent Contractor Agreement, Exhibit A.

2. The May 18, 2000 Purchase Order and the June 6, 2000 Purchase Orders between Cat Pro and CF state:

> The latest copy of CF Industries, Inc. Independent Contractor Agreement of Terms and Conditions signed by your company and on file with CF Industries, Inc. will govern all work or services performed under this Purchase Order. Page 2 through 3.
>
> Seller [Cat Pro] shall act as an independent contractor and not as an agent or employee of Buyer [CF]. Article 25.
>
> Seller shall at his sole cost and expense, and before commencement of the work described herein, cause to be issued and shall thereafter maintain, during the entire progress of the work, minimum insurance

3

coverages as set forth below, except as otherwise agreed to with Buyer in writing: A. Workmen's Compensation and USL and HW - in accordance with the provisions of the applicable Workmen's Compensation Law or similar laws of the nation... Article 26.

> May 18, 2000 and June 6, 2000 Purchase Orders, and Blank Purchase Orders (front side and reverse side), attached collectively, Exhibit B.

3. Cat Pro purchased workers' compensation insurance from AIG Insurance Company with an effective coverage amount of $1,000,000, effective under policy number WC1024881 from December 1, 1999 to December 1, 2000.

> Certificate of Liability Insurance, Exhibit C.

4. On the date of his death, Richard Escobedo was insured for workers' compensation benefits under the policy referenced immediately above.

> Certificate of Liability Insurance, Exhibit C; Purchase Orders, Exhibit B.

5. The Independent Contractors Agreement is the latest-in-time Independent Contractor Agreement between CF and Cat Pro.

> Deposition of Bryan Joseph Theriot, Exhibit D, pages 15 through 16.

6. The Independent Contractor Agreement governed the work performed by Cat Pro for CF.

> Deposition of Bryan Joseph Theriot, Exhibit D, pages 16 through 17; pages 29 through 30; page 49; pages 52 through 53.

4

7. The Independent Contractor Agreement between CF and Cat Pro does not recognize a statutory employer relationship between CF and Cat Pro.

> Deposition of Bryan Joseph Theriot, Exhibit D, page 19; Exhibit A.

8. The Independent Contractor Agreement does not contain the statement: "Seller recognizes that and agrees that a statutory employer relationship as envisioned by La. R.S. 23:1061(A), as amended by Act 315 of 1997, exists between the Seller and Buyer with respect to the services and work to be provided by Seller for Buyer, as to Seller's direct employees and its statutory employees; and that the services and work to be performed are an integral part of, or essential to, the ability of buyer to generate its own goods, products and /or services."

> Deposition of Bryan Joseph Theriot, Exhibit D, page 51-52; Exhibit A.

9. Cat Pro did not return a signed Acknowledgment Copy of the May 18, 2000 Purchase Order to CF.

> Deposition of Bryan Joseph Theriot, Exhibit D, pages 37 through 38.

10. Of the four (4) preprinted pages of the Purchase Order, the terms and conditions that are stated on the reverse side of the pages are only stated on the reverse sides of the "Original-Vendor" and "Acknowledgment" pages.

> Deposition of Bryan Joseph Theriot, Exhibit D, page 37.

11. Ammonia Plant 3, the portion of CF's facility in Donaldsonville, Louisiana that is the subject of this lawsuit, produces ammonia/anhydrous ammonia.

> Deposition of Karl R. Kastner, Jr., Exhibit E, page 10.

12. Ammonia Plant 3 was constructed in 1975 and began operation in late 1976 or early 1977.

> Deposition of Karl R. Kastner, Jr., Exhibit E, pages 11 through 12.

13. When Ammonia Plant 3 was originally constructed, it was not constructed with molecular sieve vessels. The molecular sieve vessels were installed at Ammonia Plant 3 in 1991 or 1992.

> Deposition of Karl R. Kastner, Jr., Exhibit E, pages 15 through 16.

14. Between 1975 and approximately 1991 or 1992, Ammonia Plant 3 operated without molecular sieve vessels in place.

> Deposition of Karl R. Kastner, Jr., Exhibit E, pages 15 through 16.

15. When the molecular sieve vessels were installed in 1991 or 1992, repiping was done to accommodate the installation of the molecular sieve vessels. The repiping was done in order to make Ammonia Plant 3 operate more efficiently

> Deposition of Karl R. Kastner, Jr., Exhibit E, page 21; page 43.

16. The molecular sieve vessels dry synthesis gas in order to make the compressors at Ammonia Plant 3 more efficient.

> Deposition of Karl R. Kastner, Jr., Exhibit E, pages 21 through 22; pages 33 through 34.

17. Cat Pro was hired by CF to replace desiccant (drying materials) in the molecular sieve vessels at Ammonia Plant 3.

        Deposition of Karl R. Kastner, Jr., Exhibit E, page 24.

18. Other than replacing desiccant in the molecular sieve vessels at Ammonia Plant 3, Cat Pro was not (1) repairing the structure of the molecular sieve vessels, (2) installing any piping or instrumentation related to the molecular sieve vessels, (3) overhauling the molecular sieve vessels, (4) updating the structure, piping or instrumentation related to the molecular sieve vessels, or (5) participating in a turnaround at the plant.

        Deposition of Karl R. Kastner, Jr., Exhibit E, pages 24 through 28.

19. At the time that Cat Pro was replacing the desiccant in the molecular sieve vessels at Ammonia Plant 3, Ammonia Plant 3 was not shut-down and continued to produce ammonia.

        Deposition of Karl R. Kastner, Jr., Exhibit E, pages 26 through 27.

20. CF could repipe Ammonia Plant 3 and could produce ammonia without the molecular sieve vessels in place.

        Deposition of Karl R. Kastner, Jr., Exhibit E, pages 47 through 48.

21. If the molecular sieve vessels were not in place, CF would not need Cat Pro or another contractor to replace desiccant in the molecular sieve vessels.

        Deposition of Karl R. Kastner, Jr., Exhibit E, pages 47 through 48.

Respectfully submitted,

*Peter N Freiberg*
_____
**GLADSTONE N. JONES, III, T.A. (#22221)**
**PETER FREIBERG (#22912)**
**SMITH, JONES & FAWER, L.L.P.**
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Fax: (504) 525-2205
**Counsel for Plaintiff**

### CERTIFICATE OF SERVICE

I hereby certify that I have on this 31ST day of May, 2001, served a copy of the foregoing upon all counsel of record by depositing the same in the United States Mail, properly addressed and first class postage prepaid.

*Peter N Freiberg*
_____

8