'FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA.

01 AUG 31 PM 1:45

SIGN_____
by DEPUTY CLERK

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRISTINA ESCOBEDO** | **CIVIL ACTION NO.: 00-601D-M3** |
| **VERSUS** | **JUDGE:** **HONORABLE JAMES J. BRADY** |
| **CF INDUSTRIES, INC. AND** **TURNER INDUSTRIES, LTD.** | **MAGISTRATE JUDGE:** **HONORABLE DOCIA L. DALBY** |

---

### MEMORANDUM ON BEHALF OF CF INDUSTRIES, INC.
### IN SUPPORT OF
### (SECOND) MOTION FOR SUMMARY JUDGMENT
### AND ALTERNATIVE MOTION FOR DISMISSAL

---

MAY IT PLEASE THE COURT:

### FACTUAL BACKGROUND

Plaintiff's decedent, Richard Escobedo, was an employee of a contractor entitled Catalyst Process Specialist, Inc. ("Cat Pro"). Cat Pro was hired, in May, 2000, by mover, CF Industries, Inc. ("CFI"), to perform certain work on the premises of CFI's Donaldsonville Nitrogen Complex. For purposes of the Louisiana Workers' Compensation Act, CFI was the "principal" and Cat Pro was the "contractor."

| INITIALS | DOCKET# |
|---|---|
| NML | 36 |

C:JJB/SE

On May 24, 2000, an explosion occurred on the premises of CFI's Donaldsonville Nitrogen Complex. In that explosion, plaintiff's decedent, Richard Escobedo, was killed. Plaintiff, in the captioned action, has sued CFI alleging entitlement to a tort recovery for the wrongful death of Mr. Escobedo. CFI files these alternative motions, showing that Mr. Escobedo was the "statutory employee" of CFI and that CFI is therefore statutorily immune to plaintiff's tort action.

Mr. Escobedo was killed while in the course and scope of his employment by Cat Pro, while he was working on CFI's premises. Cat Pro was performing its work for CFI pursuant to a written contract (the "1996 Contract") and further pursuant to a written purchase order (purchase order number 999581, issued by CFI to Cat Pro on 5/18/00, hereinafter referred to as "P.O. 999581"). The purchase order contained the language required by the Louisiana's Workers Compensation statute, more particularly LSA-R.S. 23:1061,[1] declaring CFI (the principal) to be a "statutory employer" of the employees of Cat Pro (its contractor). By its own terms, P.O. 999581 is a contract between CFI and Cat Pro.

Thus, by law[2], a rebuttable presumption exists that CFI was Escobedo's statutory employer. As such, CFI is granted the exclusive remedy protections of R.S. 23:1032, and is immune to tort liability. Plaintiff can only overcome the presumption if she proves that the work Cat Pro was performing was not an integral part of or essential to CFI's ability to

---

[1]     As amended by Act 315 of 1997.

[2]     LSA-R.S. 23:1061(A)(3): see Attachment "A" (tab 5)

**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second) Motion for Summary Judgment and Alternative Motion for Dismissal**                    **Page 2**

generate its products.[3] Plaintiff cannot make such proof; therefore, CFI must be dismissed from this lawsuit.

## APPLICABLE LAW

The Louisiana Workers' Compensation Statute was amended by Act 315 of the 1997 regular legislative session. The amendment was approved and effective on June 17, 1997. The full text of Act 315 of 1997, together with the full text of the pertinent sections (sections 1032 and 1061) of the Louisiana Workers' Compensation Act are reproduced in Attachment A[4], which is made a part hereof.[5]

In brief, the new (1997) provisions of the Louisiana Workers' Compensation Act relating to the "statutory employer" status issue provide that, where a written contract between a principal (CFI) and a contractor (Cat Pro) recognizes the principal as a statutory employer, the status of the principal (CFI) as a statutory employer constitutes a rebuttable presumption, which may be overcome only by showing that the work of the contractor (Cat Pro) "is not an integral part of or essential to the ability of the principal to generate that individual principal's... products."[6] (emphasis added) Where, as here, the principal (CFI) has acquired the status of "statutory employer" it is entitled, under sections 1061 and 1032

---

3    LSA-R.S. 23:1061(A)(3): see Attachment "A" **(tab 5)**.

4    **Tab 5**

5    A history of the statutory employer doctrine is unnecessary to this motion, but a brief history is appended hereto as "Attachment B" **(tab 6)**

6    LSA-R.S. 23:1061(A)(3): see Attachment "A" **(tab 5)**

**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second)**
**Motion for Summary Judgment and Alternative Motion for Dismissal**                    **Page 3**

of the Compensation Act, to tort immunity.

## PLAINTIFF'S OPPOSITION TO CFI'S ("FIRST")
## MOTION FOR SUMMARY JUDGMENT

CFI filed these identical motions originally on March 22, 2001. Plaintiff's counsel filed an opposition to CFI's motion on or about May 31, 2001. In his opposition, plaintiff's counsel attempted to raise certain fact and legal issues which he contended were fatal to CFI's Motions for Summary Judgment/Dismissal. More specifically, plaintiff raised the following issues:

1.  Legal issue: Plaintiff claims that a statutory employer relationship cannot exist between CFI and employees of Cat Pro where the contract between CFI and Cat Pro provides that Cat Pro shall remain an "independent contractor".

2.  Fact issue: Plaintiff claims that "CF has failed to offer evidence that Cat Pro agreed to the terms and conditions on the purchase order or that there was a "meeting of the minds" between CF and Cat Pro ...."

3.  Fact issue: Plaintiff claims that there is a conflict between the 1996 Contract contract between CFI and Cat Pro, on the one hand, and P.O. 999581, on the other hand, and therefore that there is a "choice of inferences" as to which is applicable.

4.  Fact issue: Plaintiff claims that the work being performed by Cat Pro upon CFI's plant premises was not "essential to the ability of CFI to produce its

**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second)
Motion for Summary Judgment and Alternative Motion for Dismissal**                    **Page 4**

Case 3:00-cv-00601-JJB Document 36 08/31/01 Page 4 of 28

product."

In response to these issues raised by plaintiff's counsel, mover CFI sought a continuance of its motions so that it could conduct research and discovery in order to address the issues raised by plaintiff. With the kind cooperation of plaintiff's counsel, the Court dismissed CFI's motions, but without prejudice to the right to re-file the motions within delays allowed by the Court. CFI has completed certain discovery (as described more fully below), and now re-files its motions and addresses the issues raised by plaintiff.

## ARGUMENT

1. **Plaintiff's decedent, Richard Escobedo, was employed by Cat Pro and was working on CFI's Donaldsonville premises on May 24, 2000, when he sustained fatal injuries as a result of an explosion.**

There is no dispute whatever as to this factual element. See CFI's statement of uncontested facts[7] and plaintiff's complaint.[8]

2. **Cat Pro was working for CFI under two written documents which, together, constituted the total contract between Cat Pro and CFI at the time of the explosion.**

---

[7]     **Tab 3**

[8]     **Tab 21**

**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second) Motion for Summary Judgment and Alternative Motion for Dismissal**          **Page 5**

### a.    The 1996 Contract

A blanket service contract entitled "Agreement of Terms and Conditions" (the "1996 Contract" or the "Contract") was entered into by and between CFI and Cat Pro on 8/12/96.[9]  That this contract was entered into between CFI and Cat Pro is confirmed by the affidavit of Bryan Theriot (CFI Superintendent of Purchasing and Warehouse)[10] and by the deposition of Robert E. Stroup (President of Cat Pro).[11]  There is no dispute that this contract was executed by and between CFI and Cat Pro.  This "1996 Contract" does not contain the language relating to the statutory employer status of CFI because it was executed in 1996, prior to the 1997 amendments to the Louisiana Workers' Compensation Act which required such written contractual language.

### b.    Purchase Order 999581

Purchase Order 999581 ("P.O. 999581") was issued by CFI to Cat Pro on

---

[9]      See Exhibit A to Affidavit of Bryan Theriot (**tab 9**) and Exhibit 4 to the deposition of Robert Stroup (**tab 15**)

[10]     **Tab 8**.

[11]     **Tab 14**, deposition pp. 11 - 13: The President of Cat Pro, Robert Stroup, identified two copies of the 1996 Contract, which were marked as deposition exhibits 3 and 4.  According to Mr. Stroup, the contract was executed on behalf of Cat Pro by Mr. Roger Haynes, and Mr. Haynes was authorized to execute the contract on behalf of Cat Pro (dep. page 12).

**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second)**
**Motion for Summary Judgment and Alternative Motion for Dismissal**                         **Page 6**

Case 3:00-cv-00601-JJB   Document 36   08/31/01   Page 6 of 28

5/18/00.[12] The "Vendor" and "Acknowledgment" copies of the purchase order were sent to the vendor (Cat Pro) by CFI.[13] The "Vendor" and "Acknowledgment" copies of P.O. 999581 were received by Cat Pro.[14] The "Acknowledgment" copy of P.O. 999581 was signed by James Davis, a Cat Pro employee who was authorized to sign the acknowledgment copy of the purchase order on behalf of Cat Pro.[15] **P.O. 999581 was the purchase order under which Cat Pro was conducting its work at the CFI plant on May 24, 2000.**[16] That Cat Pro was conducting its work for CFI under P.O. 999581 is further confirmed by the fact that (1) Cat Pro issued an invoice for

---

[12]  Affidavit of Karl Kastner (**tab 7**); affidavit of Bryan Theriot (**tab 8**); Exhibit B to affidavit of Bryan Theriot (**tab 10**); deposition of Robert E. Stroup (**tab 14**); Exhibits 8 (**tab 16**) and 9 (**tab 17**) to deposition of Robert E. Stroup.

[13]  Affidavit of Bryan Theriot, item 7 (**tab 8**).

[14]  Deposition of Robert E. Stroup, President of Cat Pro, text pp. 16: the original "Vendor" copy of P.O. 999581, as received by Cat Pro, and as identified by Mr. Stroup, was marked as Exhibit 8 to the Stroup deposition and is attached to this memorandum under **tab 16**. The original "Acknowledgment" copy of P.O. 999581, as received by Cat Pro, and as identified by Mr. Stroup, was marked as Exhibit 9 to the Stroup deposition and is attached to this memorandum under **tab 17**. Since both of these originals of P.O. 999581 were produced by Cat Pro from its business files, it is clear that Cat Pro received them. Further, the "Acknowledgment" copy of P.O. 999581 was signed by Cat Pro's representative, James Davis. (deposition of Stroup, text pp. 16 - 17, **tab 14**).

[15]  Deposition of Robert E. Stroup, President of Cat Pro, text pp. 16 - 17 (**tab 14**).

[16]  Testimony of Robert E. Stroup: The Vendor copy (Stroup Exhibit 8, **tab 16**) and the Acknowledgment copy of P.O. 999581 (Stroup Exhibit 9, **tab 17**) are stated by Mr. Stroup, President of Cat Pro, to be the purchase order under which Cat Pro was conducting its work at the CFI plant on May 24, 2000: deposition pp. 17, 32 - 33 (**tab 14**).

**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second) Motion for Summary Judgment and Alternative Motion for Dismissal**                    **Page 7**

Case 3:00-cv-00601-JJB   Document 36   08/31/01   Page 7 of 28

its work which references P.O. 999581;[17] and (2) Cat Pro, in its normal course of doing business, prepared its "Job Check Off Sheet" prior to the job.[18] The Job Check Off Sheet contains purchase order number 999581. Since, by the testimony of Robert E. Stroup, President of Cat Pro,[19] the Job Check Off Sheet is filled out prior to the job, this proves that Cat Pro received P.O. 999581 prior to beginning the work, since the purchase order number is entered on the face of the Job Check Off Sheet.[20] P.O. 999581 <u>does</u> contain the statutorily-required language establishing the statutory employer status of CFI.

c. **The work being performed by Cat Pro at CFI in May, 2000, was being performed in accordance with <u>both</u> the 1996 Contract and P.O. 999581.**

      i.     Both the 1996 Contract and P.O. 999581 applied to Cat Pro's work.

---

[17]     Exhibit 12 to Stroup deposition (**tab 18**).

[18]     Exhibit 18 to Stroup deposition (**tab 19**).

[19]     Stroup deposition, p. 26, line 23 through p. 28, line 8 (**tab 14**).

[20]     Note that language printed on the purchase order provides: "5. Complete Contract: This Purchase Order in its entirety shall become a binding contract between Seller [Cat Pro] and Buyer [CFI] upon Seller signing and returning an acceptance copy of this Purchase Order, **or upon Seller ... otherwise acknowledging acceptance of this Purchase Order or commencing performance of the work/service described herein**, whichever occurs first." (emphasis added) It is clear from the deposition of Robert E. Stroup, President of Cat Pro, that Cat Pro both "otherwise acknowledg[ed] acceptance of [the] Purchase Order" (by signing it) <u>and</u> by "commencing performance of the work ...."

**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second) Motion for Summary Judgment and Alternative Motion for Dismissal**
        **Page 8**

Case 3:00-cv-00601-JJB   Document 36   08/31/01   Page 8 of 28

This is established by the affidavit of Karl Kastner.[21]

ii.     The deposition of Robert E. Stroup, President of Cat Pro, establishes
        that both contracts were received, acknowledged and signed by
        authorized persons on behalf of Cat Pro.[22]

iii.    P.O. 999581 contains the following language:

        "5. Complete Contract: *** Any Purchase Order, together with
        the ... documents referred to therein, and **together with any
        agreement of terms referenced therein** ... constitute the
        complete and final agreement between the parties ...."[23]
        (emphasis added)

iv.     P.O. 999581 further contains the "typed-in" provision:

        "The latest copy of CF Industries, Inc. independent contractor
        agreement of terms and conditions signed by your company
        and on file with CF Industries, Inc. will govern all work or
        services performed under this purchase order." (emphasis
        added)

        This refers to the 1996 Contract: there is no later "copy of CF

        Industries, Inc. independent contractor agreement of terms and

        conditions signed by your company and on file with CF Industries,

        Inc.".   CFI's purchase order form not only contemplates but

        specifically provides that a prior "agreement of terms and conditions"

---

[21]    Affidavit of Karl Kastner, item 3 (**tab 7**).

[22]    See Exhibit 4 to the Stroup deposition (**tab 15**) and Exhibit 9 to the Stroup deposition (**tab 17**)

[23]    See Exhibit C to affidavit of Bryan Theriot (**tab 11**) or Exhibit 9 to Stroup deposition (**tab 17**).

**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second)**
**Motion for Summary Judgment and Alternative Motion for Dismissal**                    Page 9

will be referenced in the purchase order and will form a part of the total contract between the parties.

v.   Further, the 1996 Contract contains numerous provisions relating to the issuance of purchase orders (bold emphasis added):

> "1. PERFORMANCE OF SERVICES:  CFII may, from time to time, engage CONTRACTOR [Cat Pro] to perform services pursuant to a ... **purchase order** issued to CONTRACTOR (a "**Purchase Order**"), or other written authorization."   ***  CONTRACTOR shall perform all such services in accordance with the terms and conditions of this Agreement.  All services (collectively, the "Services") undertaken by or performed by or rendered by CONTRACTOR for CFII shall be rendered and performed and undertaken in accordance with the terms and conditions of this Agreement, irrespective of whether the ... **Purchase Order** or other authorization of work specifically refers to this Agreement.

> "2. REMUNERATION:  CFII shall pay to CONTRACTOR the remuneration specified in the ... **Purchase Order** ... on a lump sum, cost plus or cost plus fixed fee basis as specified therein. ***

> "13.  INSURANCE:  ***  Failure to secure the insurance coverages or failure to comply fully with any of the insurance provisions of this Agreement and all ... **Purchase Orders** and other written authorizations, or failure to secure such endorsements on the policies as may be necessary to carry out the terms and provisions of this Agreement and all ... **Purchase Orders** and other written authorizations, shall in no way act to relieve Contractor from the obligations of this Agreement and any ... **Purchase Order** and other written authorization, anything herein to the contrary notwithstanding. ***

> "16.   INDEPENDENT CONTRACTOR:   CONTRACTOR

**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second) Motion for Summary Judgment and Alternative Motion for Dismissal**                    **Page 10**

Case 3:00-cv-00601-JJB   Document 36   08/31/01   Page 10 of 28

acknowledges that it is an independent contractor and not in any respect an agent or employee of CFII. CONTRACTOR is not subject to the direction or control of CFII as to the manner in which it performs services pursuant to this Agreement and any ... **Purchase Order** or other agreement and shall not represent to others that it is anything other than an independent contractor.

"17. SUBCONTRACTORS; TERMINOLOGY: *** As used in this Agreement and in all ... **Purchase Orders** and other agreements, the term "CONTRACTOR" shall always include any subcontractor of CONTRACTOR ....

"19. NON - DISCRIMINATION: In connection with the performance of work and the rendition of Services under this Agreement and all ... **Purchase Orders** and other agreements, CONTRACTOR agrees to comply fully with all of the provisions of the Civil Rights Act .... ***

"26. TERMINATION: CFII may terminate this Agreement and the performance of all services for CFII without notice if performance is not undertaken and completed:
(a)     within the term specified in the ... **Purchase Order** or other agreement ....

"29. CONFLICT: Should the parties hereto enter into a ... **Purchase Order** or any other written contract ... which is specifically prepared for a particular job to be done or service to be rendered by CONTRACTOR, then, in the event of a conflict between the terms of such ... **Purchase Order** or contract and the terms of this Agreement, the terms of the ... **Purchase Order** or specific special contract for the particular job or service shall prevail. (underline emphasis also added)[24]

---

[24]     Excerpts from the 1996 Contract: Exhibit "A" to the Affidavit of Bryan Theriot (**tab 9**); exhibit 4 (**tab 15**) to the 8/16/01 deposition of Robert E. Stroup, president of Cat Pro.

vi.     From the foregoing, it is plain that each of the two documents (the 1996 Contract and P.O. 999581) contemplates that the other will be issued and that both documents, together, will constitute the total agreement of the parties: the Purchase Order (P.O. 999581) refers to the Agreement of Terms and Conditions (1996 Contract) and the Agreement of Terms and Conditions (1996 Contract) refers to the Purchase Order.    In short, since each document refers to and contemplates the issuance of the other, the two documents are clearly intended to be read together.  The "Conflicts" language in the 1996 Contract sets forth which document is to prevail if there is any conflict between the two: the purchase order (P.O. 999581) will prevail.

**3.     There is no conflict between the two contracts or within the contracts.**

CFI anticipates that plaintiff will attempt to claim that there are internal inconsistencies within or between the 1996 Contract and P.O. 999581, and that there are resulting "fact issues" which somehow would make Summary Judgment inappropriate.  This is completely incorrect, as shown hereafter:

There are four relevant provisions, two from each contract:

a.     The 1996 Contract contains the following language in Paragraph 1:

> \*\*\* CONTRACTOR shall perform all such services in accordance with the terms and conditions of this Agreement.  All services (collectively, the "Services") undertaken by or performed by or rendered by CONTRACTOR for CFII shall be rendered and performed and

**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second) Motion for Summary Judgment and Alternative Motion for Dismissal**                                              **Page 12**

Case 3:00-cv-00601-JJB   Document 36   08/31/01   Page 12 of 28

undertaken in accordance with the terms and conditions of this Agreement, irrespective of whether the ... Purchase Order or other authorization of work specifically refers to this Agreement.

b.      The 1996 Contract also contains the following language in Paragraph 29:

CONFLICT:  Should the parties hereto enter into a ... **Purchase Order or any other written contract ... which is specifically prepared for a particular job to be done or service to be rendered by CONTRACTOR**, then, in the event of a conflict between the terms of such ... Purchase Order or contract and the terms of this Agreement, the terms of the ... Purchase Order or specific special contract for the particular job or service shall prevail.  (emphasis added)

c.      P.O. 999581 contains the following printed language in Paragraph 5:

Complete Contract:  *** Any Purchase Order, together with the ... documents referred to therein, and **together with any <u>agreement of terms</u> referenced therein** ... constitute the complete and final agreement between the parties ...."  (emphasis added)

d.      P.O. 999581 further contains the "typed-in" provision:

"The latest copy of CF Industries, Inc. independent contractor **<u>agreement of terms and conditions</u>** signed by your company and on file with CF Industries, Inc. [i.e., the 1996 Contract] will govern all work or services performed under this purchase order."  (emphasis added)

There is no conflict between these four provisions.  In fact, they are mutually inter-locking and demonstrate the intent that the two agreements are to be read together to form one contract between the parties.  The 1996 Contract (which is, in essence, a "master service contract"), provides in the numerous places quoted

above[25] that a Purchase Order will be issued.

The provisions of Paragraph 1 of the 1996 Contract ("a" above) merely state that, if and when a Purchase Order is issued, the terms of the "Terms and Conditions" Contract (1996 Contract) will nevertheless apply. The terms of the 1996 Contract will apply even if someone forgets to reference the Contract in the Purchase Order.

Paragraph 29 of the 1996 Contract ("b" above) provides what to do *in case of a conflict* between the language of the Contract and the language of the Purchase Order: the terms of the Purchase Order are to prevail. The fact that the 1996 Contract contains a conflicts provision clearly shows that the 1996 Contract contemplates that two contracts will apply and that there may be a conflict between the two. This does not mean that either contract is inapplicable.

Paragraph 5 of the Purchase Order form ("c" above) merely re-confirms that both the Contract (1996 Contract) and Purchase Order (P.O. 999581), together, constitute the entire agreement between the parties.

The "typed-in" language of the Purchase Order ("d" above) merely re-confirms that the Contract (1996 Contract) applies to or governs the work. This simply re-confirms or "mirrors" the language of the 1996 Contract indicating that a Purchase Order will be issued in addition to the Contract. **Saying that the Contract will govern the work does not mean that it is the only part of the**

---

[25]     In section 2(c)(v) of this argument

agreement that will govern the work. The language in "d" above does <u>NOT</u> say that the Contract will govern the work <u>exclusively</u>.

All of the foregoing is actually unnecessary: <u>there is no conflict</u> (for purposes of these alternative motions) between the 1996 Contract and P.O. 999581: the latter contains the relevant provision concerning the statutory employer status of CFI; the former is silent on that subject. Therefore: there is no conflict; the contracts are intended to work and to be read together; P.O. 999581 contains the requisite statutory language; and P.O. 999581 was the Purchase Order under which the relevant work was done, by testimony of officials of <u>both</u> CFI and Cat Pro.

### 4. Louisiana law is to be applied

Both the 1996 Contract and P.O. 999581 provide that the law of Louisiana is to be applied:

a.  ". . . all matters relating to the validity, meaning, rights, obligations, or performance of this agreement shall be decided in accordance with the laws of the State of Louisiana."[26]

b.  "All matters relating to the validity, meaning, rights, obligations, and performance of this Purchase Order shall be decided in accordance with

---

[26]    Article 31 of the 1996 Contract: Exhibit "A" to the Affidavit of Bryan Theriot **(tab 9)**; exhibit 4 to the 8/16/01 deposition of Robert E. Stroup, president of Cat Pro **(tab 15)**.

**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second)**
**Motion for Summary Judgment and Alternative Motion for Dismissal**                    **Page 15**

Case 3:00-cv-00601-JJB    Document 36    08/31/01    Page 15 of 28

Louisiana Law."[27]

5. **P.O. 999581 contains the statutorily-required language establishing CFI's status as a statutory employer.**

P.O. 999581 contains the following language:

> "**Seller recognizes and agrees that a statutory employer relationship** as envisioned by La. R.S. 23:1061(A), as amended by Act 315 of 1997, **exists between the Seller and Buyer** with respect to the services and work to be provided by Seller for Buyer, **as to Seller's direct employees** and its statutory employees, **and that the services and work to be performed are an integral part of, or essential to, the ability of Buyer to generate its own goods, products and/or services.**"[28] (emphasis added)

6. **The work being performed by Cat Pro for CFI in May, 2000, was essential to the ability of CFI to generate its own products.**

The affidavit of Lester E. Sutherland[29] explains the purpose and operation of the mole sieve vessels in CFI's Ammonia 3 Plant. In brief: CFI's Ammonia 3 Plant was reconfigured in 1986 in order to make the production of ammonia more energy efficient. The reconfiguration of the plant required that the synthesis loop compressor and the ammonia converter be protected from "catalyst poisons" (i.e., $H_2O$ and $CO_2$) in the syngas stream. The purpose of the mole sieve vessels is to

---

[27]     Paragraph 23 of P.O. 999581: Exhibit C to the Affidavit of Bryan Theriot (**tab 11**); exhibits 8 (**tab 16**) and 9 (**tab 17**) to the 8/16/01 deposition of Robert E. Stroup, president of Cat Pro.

[28]     Paragraph 30 of P.O. 999581: Exhibit C to the Affidavit of Bryan Theriot (**tab 11**); exhibits 8 (**tab 16**) and 9 (**tab 17**) to the 8/16/01 deposition of Robert E. Stroup, president of Cat Pro.

[29]     **Tab 20**

**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second)**
**Motion for Summary Judgment and Alternative Motion for Dismissal**                    **Page 16**

Case 3:00-cv-00601-JJB   Document 36   08/31/01   Page 16 of 28

remove these contaminants from the syngas stream. As it is has been configured since 1986, CFI's Ammonia 3 Plant cannot operate without functioning mole sieve vessels. Therefore, functioning mole sieve vessels are an integral part of and are essential to the ability of CFI to produce its product, ammonia. Cat Pro's job on the premises of CFI's plant in May, 2000, was to replace the desiccant material in the mole sieve vessels, i.e., to keep the mole sieve vessels functioning properly. Accordingly, the work being performed by Cat Pro was essential to the ability of CFI to produce its product. The purpose of the reconfiguration of the plant (including the use of mole sieve vessels) was to increase the energy efficiency of the plant. This was a "modernization" of the plant, done at considerable expense for a very good reason: keep the plant operating competitively by improving efficiency and productivity.

That the mole sieve vessels and the work being performed by Cat Pro are/were essential to the ability of CFI to generate its product is further established by the affidavit of Karl Kastner.[30]

7.    Since P.O. 999581 constituted (part of) a contract between CFI and Cat Pro; since P.O. 999581 contained the requisite statutory language; and since the work being performed by Cat Pro was "an integral part of or essential to the ability of CFI to generate its own goods, products and/or services," CFI is entitled to a rebuttable presumption that it was the statutory employer of Escobedo.

_____

[30]    Attachment C (**tab 7**): paragraph 4.

**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second) Motion for Summary Judgment and Alternative Motion for Dismissal**                  **Page 17**

From the facts established above, CFI is entitled to the rebuttable presumption of

statutory employer status under LSA-R.S. 23:1061(A)(3).[31]

8.      **Plaintiff has not offered and cannot offer any evidence rebutting the presumption. Therefore, CFI has statutory employer status as to plaintiff's decedent, and is entitled to tort immunity under the exclusive remedy provisions of the Louisiana Workers' Compensation Act under LSA-R.S. 23:1032.[32]**

9.      **The issues raised by plaintiff in her opposition to CFI's first Motions**

                CFI now addresses the legal and fact issues which were raised by plaintiff

in her opposition to these motions when first filed by CFI:

        a.      **Legal issue: Plaintiff claims that a statutory employer relationship cannot exist between CFI and employees of Cat Pro where the contract between CFI and Cat Pro provides that Cat Pro shall remain an "independent contractor".**

CFI's response: It is well established that a contractor's status as an "independent

contractor" does not preclude its employees from becoming statutory employees of

the contractor's principal.  This very issue was recently addressed by the U.S.

District Court for the Eastern District of Louisiana in the matter of *Johnson v.*

*Tennessee Gas Pipeline Co.*[33]  In that case, plaintiff Johnson was an employee of

---

[31]     See Attachment A **(tab 5)**

[32]     See Attachment A **(tab 5)**

[33]     99 F. Supp. 2d 755 (E. D. La. 2000): see **tab 22**.

**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second)**
**Motion for Summary Judgment and Alternative Motion for Dismissal**                    **Page 18**

Case 3:00-cv-00601-JJB   Document 36   08/31/01   Page 18 of 28

Delta Catering ("Catering"). Catering was contracted to provide catering services to El Paso Energy Corporation ("El Paso") and its affiliates, including Tennessee Gas Pipeline Co. ("Tennessee""); that is, the contract for catering services was between Catering, on the one hand, and El Paso, Tennessee, and others, on the other hand. The catering services were to be performed on an inshore fixed platform, to which the Louisiana Workers' Compensation Act applied. The platform was owned by Tennessee. Johnson filed a complaint, alleging that she was injured due to Tennessee's negligence. Tennessee defended on grounds that it was Johnson's statutory employer. The contract between Catering and El Paso/Tennessee contained the requisite statutory language recognizing El Paso/Tennessee as the statutory employers of Catering's employees. The same contract specifically stated that Catering was an independent contractor. Johnson argued, as does plaintiff herein, that the contractor's status as an "independent contractor" somehow prohibits its employees from becoming statutory employees of the principal. The *Johnson* court held:

> "Contrary to Johnson's argument, there is no conflict between article V's designation of independent contractor and the amendment to the agreement defining Tennessee Gas as a statutory employer. **'Even if a worker is found to be an independent contractor, he may still be subject to the workers' compensation laws if he is also determined to be a statutory employee under L.R.S. 23:1032 or 23:1061'** See *Salmon v. Exxon Corp.*, 824 F. Supp. 81, 84 (M.D. La. 1993). (emphasis added)[34]

---

[34]    See also the cases cited in *Salmon*: Duhon v. Conoco, Inc., 795 F. Supp. 189 (W.D. La.1992); Legros v. Norcen Exploration, Inc., 583 So.2d 859 (La. App. 1st Cir.), writ denied, 588 So.2d 101 and 588 So.2d 109 (La.1991); Dye v. Ipik Door Co., Inc., 570 So.2d 477 (La.

Under *Johnson* and the cases cited therein, there is no merit to plaintiff's contention that, because Cat Pro was an independent contractor, CFI cannot be a statutory employer of Cat Pro's employees. This should, indeed, be the rule: as a practical matter, plaintiff's theory is completely unworkable. A principal such as CFI must be permitted to become the statutory employer of the employees of independent contractors. If this was not permitted, all principals would be denied the very defense which the statutory employer provisions of the Compensation Act were designed to provide. Under plaintiff's theory, a principal would either (a) hire independent contractors and thereby become liable in tort to the independent contractors' employees; or (b) hire contractors who were not "independent," and thus become liable to third persons for the torts of the "non-independent" contractors while enjoying statutory employer tort immunity from the claims of the "non-independent" contractors' employees. Clearly, neither result is intended by the Louisiana Workers' Compensation Act.

In sum, there is no merit to plaintiff's contention that Cat Pro's status as an "independent contractor" precludes CFI's status as a statutory employer.

**b.  Fact issue: Plaintiff claims that "CF has failed to offer evidence that Cat Pro agreed to the terms and conditions on the purchase order or that there was a "meeting of the minds" between CF and Cat Pro ...."**

CFI's response: This issue has been completely eradicated by the corporate

App. 5th Cir.1990).

Case 3:00-cv-00601-JJB   Document 36   08/31/01   Page 20 of 28

deposition of Cat Pro, which appeared through its president, Mr. Robert E. Stroup. The deposition was taken on August 16, 2001.   Mr. Stroup produced, from the corporate records of Cat Pro:

      i.      A duplicate copy of the 1996 Contract (**tab 15**);
      ii.     The original "Vendor" copy of P.O. 999581 (**tab 16**);
      iii.   The original "Acknowledgment" copy of P.O. 999581 (**tab 17**);
      iv.   An invoice issued by Cat Pro for the work done at CFI (**tab 18**); and
      v.    A Job Check Off Sheet prepared by Cat Pro prior to the job (**tab19**).

There was/is no other, later contract than the 1996 Contract, or any record of the 1996 Contract having been terminated.  Therefore, by its terms, it is still in effect.  The "Acknowledgment" copy of P.O. 999581 was in Cat Pro's company records, having been signed by an authorized representative of the company. [It obviously was not returned to CFI because of the intervening explosion.] Cat Pro issued an invoice based on P.O. 999581.  Cat Pro completed its customary Job Check Off Sheet prior to the job; this document references P.O. 999581.  **Mr. Stroup himself testified twice that the work being done by Cat Pro was being done under P.O. 999581.** Clearly, Cat Pro would not have issued an invoice under P.O. 999581 if it did not agree that P.O. 999581 was applicable to the job; nor would it have filled out its Job Check Off Sheet with the P.O. number, if the P.O. was not applicable. Cat Pro's authorized representative, Mr. James Davis, would not have signed the Acknowledgment copy of P.O. 999581, if he was not accepting it as being applicable to the job.  Thus, no issue remains.

**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second)**
**Motion for Summary Judgment and Alternative Motion for Dismissal**            **Page 21**

Case 3:00-cv-00601-JJB   Document 36   08/31/01   Page 21 of 28

c.  **Fact issue: Plaintiff claims that there is a conflict between the 1996 Contract contract between CFI and Cat Pro, on the one hand, and P.O. 999581, on the other hand, and therefore that there is a "choice of inferences" as to which is applicable.**

CFI's response: This issue is put to rest under section 3 of the Argument, above.


d.  **Fact issue: Plaintiff claims that the work being performed by Cat Pro upon CFI's plant premises was not "essential to the ability of CFI to produce its product."**

CFI's response: Plaintiff apparently argues that mole sieve vessels (and therefore the work being performed by Cat Pro) are not "essential" to the ability of CFI to generate its product, since, prior to 1986, CFI's Ammonia 3 Plant produced ammonia without using mole sieve vessels. This is a spurious argument on several levels. First, the logical extension of plaintiff's argument would be to say: no company can expand or modernize its plant without suffering the loss of the legal protections (tort immunity to statutory employees) offered by the Louisiana Workers' Compensation Act. According to plaintiff, anything done to improve a process is not "essential" to the process, because the process used to work without the improvement. This argument is facially ridiculous. Extended logically to other fields, this argument would conclude: word-processing computers are not "essential" to the practice of law today, because, prior to 20 years ago, law firms operated without word-processing computers; jet planes are not essential to Delta Airlines today, because, 50 years ago, Delta carried all of its passengers in propeller-driven

Memorandum on Behalf of Cf Industries, Inc. In Support of (Second)
Motion for Summary Judgment and Alternative Motion for Dismissal                    Page 22

Case 3:00-cv-00601-JJB   Document 36   08/31/01   Page 22 of 28

aircraft; air conditioning is not essential in courthouses today, because, prior to 50 years ago, most courthouses operated just fine without air conditioning. Under plaintiff's argument, a chemical plant in Louisiana would never be able to expand its operations: i.e., a construction contractor building a plant expansion would not be engaged in work "integral or essential to the ability of the company to generate its product," because the company previously generated its product without the plant expansion. It clearly cannot have been the intent of the Louisiana legislature, in passing the 1997 amendments to the Workers' Compensation Act, to withhold application of the amendment from every contractor which is engaged in work consisting of improving, modernizing or expanding its principal's plant facilities.

The foregoing logic should be more than sufficient to demonstrate the speciousness of plaintiff's argument. If there is any doubt, however, it is fully allayed by the attached affidavit of Lester E. Sutherland.[35] Mr. Sutherland, CFI's Director of Technical Services, fully explains the use of mole sieve vessels and shows that they (and the maintenance work being performed by Cat Pro upon them) are indeed essential to the ability of CFI to generate its product, ammonia.

Plaintiff cannot show that Cat Pro's work was not essential to the ability of CFI to generate its product. Therefore, plaintiff cannot rebut the presumption in favor of CFI being the statutory employer of Cat Pro's employees.

---

[35]     **Tab 20**.

**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second)**
**Motion for Summary Judgment and Alternative Motion for Dismissal**                    **Page 23**

## CONCLUSION

The circumstances are simple and straight forward: mover, CFI, was a statutory employer of decedent, Richard Escobedo. Under the provisions of the Louisiana Workers' Compensation Act, as amended in 1997, and in light of the existence of all statutorily required contractual provisions and factual circumstances, CFI is entitled to the exclusive remedy/tort immunity protections of the said Louisiana Workers' Compensation Act. Accordingly, plaintiff's complaint as against CFI must be dismissed, with prejudice.

This motion for summary judgment does not address any other factual or legal defenses possessed by CFI. All such factual and legal defenses, as set forth in CFI's answer herein, are specifically reserved and not waived.

Respectfully submitted this 31st day of August, 2001.

ROBERT E. KERRIGAN, JR. (#7350), T.A.
CHARLES E. LECHE (#8218)
OF
DEUTSCH, KERRIGAN & STILES, LLP
755 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 581-514

- and -

**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second)
Motion for Summary Judgment and Alternative Motion for Dismissal**          **Page 24**

Case 3:00-cv-00601-JJB   Document 36   08/31/01   Page 24 of 28

MARK C. DODART (#17549)
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311

- and -

JOHN W. PERRY JR. (#10524)
DANIEL J. BALHOFF (#18776)
ATKINSON, PERRY, ATKINSON
       & BALHOFF, L.L.C.
2141 Quail Run Drive
Baton Rouge, Louisiana 70884-3260
Telephone: (225) 767-7730

Attorneys for Defendant, CF Industries, Inc.


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have, on this 31st day of August, 2001, served a copy

of the foregoing motion on counsel for all parties to this proceeding, by courier service, by

hand delivery or by mailing the same by United States mail, properly addressed, and first

class postage prepaid.

_____
CHARLES E. LECHE

G:\KINDSCHE\Cef\00602\131\pldngs\MdLa\Escobedo\MFSJ - 2\MemoSupportMotn.02b wpd


**Memorandum on Behalf of Cf Industries, Inc. In Support of (Second)**
**Motion for Summary Judgment and Alternative Motion for Dismissal**        **Page 25**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

CHRISTINA ESCOBEDO

VERSUS

CF INDUSTRIES, INC. AND
TURNER INDUSTRIES, LTD.

CIVIL ACTION NO.: 00-601D-M3

JUDGE:
HONORABLE JAMES J. BRADY

MAGISTRATE JUDGE:
HONORABLE DOCIA L. DALBY

---

## CONTENTS:
## (SECOND) MOTION FOR SUMMARY JUDGMENT
## AND, ALTERNATIVELY, FOR DISMISSAL
## ON BEHALF OF CF INDUSTRIES, INC.

---

## CONTENTS:

*tab no.:*

1.  Motion
2.  Notice of Hearing
3.  Statement of Uncontested Facts
4.  Memorandum in Support of Motion
5.  Memorandum Attachment A:     Excerpts of La. Workers' Compensation
                                 Act; Act 315 OF 1997 (full text)
6.  Memorandum Attachment B:     A brief history of the statutory employer
                                 doctrine
7.  Memorandum Attachment C:     Affidavit of Karl Kastner
8.  Memorandum Attachment D:     Affidavit of Bryan Theriot

| 9.  | Exhibit A to Affidavit of Bryan Theriot: | the "1996 Contract" between CFI and Cat Pro |
|-----|-------------------------------------------|----------------------------------------------|
| 10. | Exhibit B to Affidavit of Bryan Theriot: | Copy of "front side" of "Vendor File" copy (copyset page 4) of CFI purchase order No. 999581, dated 5/18/00 |
| 11. | Exhibit C to Affidavit of Bryan Theriot: | Blank copyset of the Purchase Order form (containing printed language on "reverse side" of the form which was on the form sent to Cat Pro and under which Cat Pro performed the work) |
| 12. | Exhibit D to Affidavit of Bryan Theriot: | Change order to Purchase Order No. 999581 (irrelevant, but attached for completeness) |
| 13. | Exhibit E to Affidavit of Bryan Theriot: | Re-typed reproduction of excerpted language from the "reverse side" of the Purchase Order form (attached for purpose of making the provisions more easily readable) |
| 14. | Memorandum Attachment E: | Deposition (text) of Robert E. Stroup |
| 15. | Exhibit 4 to Stroup Deposition: | the "1996 Contract" between CFI and Cat Pro |
| 16. | Exhibit 8 to Stroup Deposition: | "Vendor" original of P.O. 999581 as received by Cat Pro |
| 17. | Exhibit 9 to Stroup Deposition: | "Acknowledgment" original of P.O. 999581 as received and signed by Cat Pro |
| 18. | Exhibit 12 to Stroup Deposition: | Invoice issued by Cat Pro for work under P.O. 999581 |
| 19. | Exhibit 18 to Stroup Deposition: | "Job Check Off Sheet" prepared by Cat Pro prior to the work at CFI, showing P.O. 999581 |
| 20. | Memorandum Attachment F: | Affidavit of Lester E. Sutherland |
| 21. | Memorandum Attachment G: | Copy of Plaintiff's Complaint |
| 22. | Memorandum Attachment H: | Copy of reported decision: *Johnson v. Tennessee Gas Pipeline Co.*, 99 F. Supp. 2d 755 (E.D. La. 2000) |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have, on this 31st day of August, 2001, served a copy of this bound set of pleadings and documents on counsel for all parties to this proceeding, by courier service, by hand delivery or by mailing the same by United States mail, properly addressed, and first class postage prepaid.

CHARLES E. LECHE